IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER J. ROBINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No.   CIV-07-169-M |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of the Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

# FINDINGS & RECOMMENDATION
# OF MAGISTRATE JUDGE

Plaintiff brings this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying her application for disability insurance benefits (DIB) under 42 U.S.C. §§416(i) and 423 and her application for supplemental security income benefits (SSI) under 42 U.S.C. §1382c(a)(3). This matter has been referred to the undersigned magistrate judge for initial proceedings consistent with 28 U.S.C. §636(b)(1)(B), and for the reasons stated herein, it is recommended that the Commissioner's decision be **REVERSED AND REMANDED for further administrative proceedings**.

## PROCEDURAL HISTORY

Plaintiff protectively filed her application for DIB on July 7, 2004 and her application for SSI on July 29, 2002 alleging a disability since March 1, 2004 (TR. 49-52, 202-204). The applications were denied on initial consideration and on reconsideration at the administrative level (TR. 24, 25, 205, 210). Pursuant to Plaintiff's request, a hearing *de novo* was held before an ALJ on July 7, 2006 (TR. 218-258). The Plaintiff appeared in person and with her attorney and offered her testimony in support of the applications (TR. 224-250). A vocational expert (VE) testified at the request of the ALJ (TR. 250-257). The ALJ issued his decision on September 29, 2006 finding that Plaintiff was not entitled to DIB or SSI (TR. 13-19). The Appeals Council denied the Plaintiff's

request for review on December 8, 2006, and thus, the decision of the ALJ became the final decision of the Commissioner (TR. 5-7).

**STANDARD OF REVIEW**

The Tenth Circuit case of *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800-801 (10th Cir. 1991), sets forth the standard of review for social security disability cases:

> We must affirm the decision of the Secretary if it is supported by substantial evidence. (*citations omitted*). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." (*citations omitted*). In evaluating the appeal, we neither reweigh the evidence nor substitute our judgment for that of the agency. (*citations omitted*). We examine the record as a whole, including whatever in the record fairly detracts from the weight of the Secretary's decision and, on that basis, determine if the substantiality of the evidence test has been met. (*citations omitted*). If, however, the correct legal test in weighing the evidence has not been applied, these limitations do not apply, and such failure constitutes grounds for reversal. (*citations omitted*).

Further, the Tenth Circuit has stated that "[a] finding of no substantial evidence will be found only where there is a conspicuous absence of credible choices or no contrary medical evidence." *Trimiar v. Sullivan*, 966 F.2d 1326, 1329 (10th Cir. 1992) *(citations omitted)*.

**DISCUSSION & FINDINGS**

In addressing the Plaintiff's disability applications the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §404.1520. At step one, the ALJ found that the Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date, so the process continued (TR. 15). At step two, the ALJ concluded that Plaintiff's schizophrenia and agoraphobia were severe impairments (TR. 15). At step three, the ALJ found that the Plaintiff did not have an impairment or combination of impairments which meets or equals any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 15). At step four, the ALJ found that Plaintiff was unable to perform any of her past relevant work (PRW) (TR. 17).

At the point that step five is reached, a disability preventing prior work activity has been shown and the burden shifts to the Commissioner to show that the claimant retains the ability to

perform an alternative work activity which exists in the national economy. *Sorenson v. Bowen*, 888 F.2d 706, 710 (10th Cir. 1989); *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989). The ALJ found that Plaintiff retained the RFC to perform a "full range of exertional work" with several restrictions (TR. 15-16). The ALJ used Medical Vocational Rule 204.0 as a framework for decision making and considered the testimony of the VE in determining there were jobs existing in significant numbers in the national economy which Plaintiff could perform (TR. 18). Thus, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act and was therefore not entitled to DIB or SSI (TR. 18-19).

On appeal to this Court, Plaintiff alleges that the ALJ erred by failing to apply the correct legal standard in evaluating the opinion of Plaintiff's treating physician, Dukheh Ahn, M.D; and that the ALJ erred by ignoring significant probative evidence in the record that conflicted with his decision.

In October 2004 Plaintiff underwent a consultative mental status examination performed by Richard D. Kahoe, Ph.D., who reported that Plaintiff's attention and concentration skills were moderately impaired; that she was oriented for person, place and time; and that she had deficits in recent memory (TR. 116). Dr. Kahoe also reported that Plaintiff's intellectual ability was estimated in the below average range with indications of a mild decline of intellectual ability; that her abstracting ability was impaired; and that she had computational deficits and poor reading comprehension (TR. 117-118). Dr. Kahoe concluded that Plaintiff had a personality best characterized as paranoid, explosive, depressive, and anxious; that her insight was fair; and that her judgment was poor (TR. 119). He diagnosed Plaintiff with schizophrenia, paranoid type, and with agoraphobia (TR. 119). He noted that her prognosis was poor; and that she had a current GAF of 44 [1] (TR. 119).

---

[1] A GAF represents Axis V of the Multiaxial Assessment system. A GAF score is a subjective determination which represents "the clinician's judgment of the individual's overall level of functioning." American Psychiatric Assoc., Diagnostic and Statistical Manual of Mental Disorders (DSM-IV), (4th ed. 1994), p. 30. The GAF score is taken from the

In November 2004, Carolyn Goodrich, Ph.D., a consulting physician, completed a mental RFC assessment of Plaintiff in which she concluded that Plaintiff was "Markedly Limited" in her ability to understand, remember, and carry out detailed instructions; and in her ability to interact appropriately with the public (TR. 165-166). Dr. Goodrich assessed Plaintiff as being able to understand and perform simple tasks (TR. 167). She further stated that Plaintiff could interact appropriately with others at a superficial level, but not the general public; and that she could adapt to a work situation (TR. 167).

Also in November 2004, Dr. Goodrich completed a Psychiatric Review Technique form (PRT) in which she concluded that Plaintiff's mental impairment caused her to have only moderate restriction of activities of daily living; and moderate difficulties in maintaining social functioning, concentration, persistence, or pace (TR. 178). Dr. Goodrich further concluded that Plaintiff had experienced one or two episodes of decompensation, each of extended duration (TR. 178).

In June 2006, Plaintiff's treating physician, Dukheh Ahn, M.D., completed a mental medical source statement in which he concluded that Plaintiff had a "Marked Limitation" which seriously affected Plaintiff's ability to perform basic work functions in the following areas:

> The ability to understand, remember, and carry out detailed instructions; the ability to maintain attention and concentration for extended periods; the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the ability to work in coordination with or proximity to others without being distracted by them; the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the ability to interact appropriately with the general public; the ability to accept instructions and respond appropriately to criticism from supervisors; the ability to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; and the ability to maintain socially

---

GAF scale which "is to be rated with respect only to psychological, social, and occupational functioning." *Id.* The GAF Scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *Id.* at 32. The GAF scale defines the range from 41 to 50 as follows: Serious symptoms (*e.g.*, suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job).

appropriate behavior and to adhere to basic standards of neatness and cleanliness

(TR. 198-199). Dr. Ahn also found that Plaintiff would continue to have the same mental impairments and the same limitations if she were not drinking (TR. 201).

Plaintiff argues that the ALJ erred by failing to apply the correct legal standard in evaluating the opinion of her treating physician, Dr. Ahn (See Plaintiff's Brief at pages 7-11). In *Goatcher v. United States Dep't of Health & Human Services*, 52 F.3d 288 (10th Cir. 1995), the Tenth Circuit outlined factors which the ALJ must consider in determining the appropriate weight to give a medical opinion.

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 290; 20 C.F.R. § 404.1527(d)(2)-(6). If an ALJ disregards a treating physician's opinion, he must set forth "specific, legitimate reasons" for doing so. *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984).

The ALJ provided only a scant review of the medical evidence and failed to discuss, or even mention, the opinions of the consulting physician, Dr. Kahoe. As to the opinions of Dr. Ahn, the ALJ observed in his decision that

> Based on treatment records from Red Rock Behavioral Health Services, the claimant sees Dr. Ahn once a month for medication refills. A review of the records from Dr. Ahn indicate no more than a "check the box" for each month (Exhibit 7F)...While the undersigned has carefully considered Dr. Ahn's opinion, it cannot be given controlling weight because it is in conflict with the group therapy treatment records from Red Rock Behavioral Health Services (Exhibit 4F) and inconsistent with the other substantial evidence as noted above

(TR. 17). As argued by Plaintiff, the ALJ in determining that Dr. Ahn's opinions were not entitled to controlling weight, failed to adequately discuss why he rejected those opinions. The ALJ ignores,

5

without explanation, the analysis required under 20 C.F.R. § 404.1527(d)(2)-(6). Thus, for the reasons discussed above, it appears that the ALJ improperly weighed and rejected the opinion of Plaintiff's treating physician, Dr. Ahn.  On remand, the Commissioner should re-evaluate the opinions of Dr. Ahn and, if those opinions are rejected, then the ALJ must set forth in the decision specific, legitimate reasons for doing so.  The ALJ should also discuss the opinions of the consultative examiner, Dr. Kahoe.

## RECOMMENDATION

Having reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ and the pleadings and briefs of the parties, the undersigned magistrate judge finds that the decision of the Commissioner is not supported by substantial evidence and should be **REVERSED AND REMANDED for further administrative proceedings**. The parties are advised of their right to object to these findings and recommendation within twenty (20) days of the date of the filing hereof, in accordance with 28 U.S.C. §636 and Local Court Rule 72.1 (a). The parties are further advised that failure to make timely objection to these findings and recommendation waives their right to appeal from a judgment of the district court based upon these findings and recommendation. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

The foregoing Findings and Recommendation disposes of all issues referred to the undersigned magistrate judge in the above captioned matter.

ENTERED this the 7th day of January 2008.

*/s/ Shon T. Erwin*
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE